IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOOSE INTERNATIONAL INC., | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-09189 |
| | ) |
| v. | ) |
| | ) |
| THE PARTNERSHIPS and | ) |
| UNINCORPORATED ASSOCIATIONS | ) |
| IDENTIFIED ON SCHEDULE "A," | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff Moose International Inc. ("Moose Knuckles" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Moose Knuckles' trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Moose Knuckles' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Moose Knuckles substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Moose Knuckles to combat online counterfeiters who trade upon Moose Knuckles' reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including outerwear and other goods, using counterfeit versions of Moose Knuckles' federally registered trademarks (the "Counterfeit Moose Knuckles Products"). Defendants create the Defendant Internet Stores and design them to appear to be selling genuine Moose Knuckles products, while actually selling Counterfeit Moose Knuckles Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Moose Knuckles Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Moose

Knuckles is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Moose Knuckles Products over the Internet. Moose Knuckles has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff Moose Knuckles**

4. Plaintiff Moose International Inc. is a Canadian corporation having a principal place of business at 225 Chabanel Street West, Suite 200, Montreal, Quebec, Canada, and is the owner of the trademark rights asserted in this action.

5. Founded in 2007, Moose Knuckles is a premium sportswear brand that updates time-honored Canadian garments for the tastes and expectations of an urban market. Moose Knuckles is inspired by Canadian heritage, personality, sports and leisure, from Canada's obsession with ice hockey, to Canada's reputation as the class clown of the global schoolhouse. The name itself is a combination of two of Canada's greatest things: a moose and a hockey fight. The Moose Knuckles logo ⚭ is a moose footprint in the snow with the hooves representing brass knuckles. Moose Knuckles self-identifies as a younger, edgier, and cheekier brand and wants to show that Canada is more than just the frozen tundra.

6. Most Moose Knuckle parkas are created using a blend of fabric consisting of 74% cotton and 26% nylon, a blend that ensures durability, strength and warmth. This fabric blend is only one of the many major components that bring quality and the luxurious look into Moose Knuckle parka designs. Some garments are coated with a rubberized backing creating a protective inner shield from wind and water. This repellent system has been tested to perform

well in the harsh cold winter temperatures, helping consumers stay warm in up to -40 degree cold extremes.

7. Since at least 2007, Moose Knuckles has used and promoted the MOOSE KNUCKLES name and trademark in connection with outerwear and sportswear, including jackets, parkas, vests, coats and sweaters. Moose Knuckles now delivers a full range of weatherproof coats, lightweight jackets, knitwear, shirting, and accessories. Moose Knuckles' impeccable tailoring, luxury materials, hardware, attention to detail and wild attitude has earned it praise from the very best luxury retailers throughout the world.

8. Moose Knuckles has continuously sold outerwear and related goods under the MOOSE KNUCKLES and ⬛⬛ trademarks (collectively, the "MOOSE KNUCKLES Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the MOOSE KNUCKLES Trademarks. Moose Knuckles' use of the marks has also built substantial goodwill in and to the MOOSE KNUCKLES Trademarks. The MOOSE KNUCKLES Trademarks are well-known marks and valuable assets of Moose Knuckles. Moose Knuckles Products typically include at least one of the registered MOOSE KNUCKLES Trademarks.

9. The Moose Knuckles brand is available in more than 30 countries, including the United States at retailers including, but not limited to, Saks Fifth Avenue, Bloomingdale's, and Nordstrom. Moose Knuckles is a fast-growing competitor in the field of outerwear and related products, including those which prominently display the well-known and federally registered MOOSE KNUCKLES Trademarks (collectively, the "Moose Knuckles Products").

10. Several of the MOOSE KNUCKLES Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 4,287,159 | MOOSE KNUCKLES (logo) | Feb. 12, 2013 | For: Jackets, shirts, suits, pants, sweaters, underwear, bathing suits, socks in class 025. |
| 4,287,158 | MOOSE KNUCKLES | Feb. 12, 2013 | For: Jackets, shirts, suits, pants, sweaters, underwear, bathing suits, socks in class 025. |
| 4,287,160 | (design logo) | Feb. 12, 2013 | For: Jackets, shirts, suits, pants, sweaters, underwear, bathing suits, socks in class 025. |

11. The above U.S. registrations for the MOOSE KNUCKLES Trademarks are valid, subsisting, and in full force and effect. The registrations for the MOOSE KNUCKLES Trademarks constitute *prima facie* evidence of their validity and of Moose Knuckles' exclusive right to use the MOOSE KNUCKLES Trademarks pursuant to 15 U.S.C. § 1057 (b). True and correct copies of the United States Registration Certificates for the above-listed MOOSE KNUCKLES Trademarks are attached hereto as **Exhibit 1**.

12. The MOOSE KNUCKLES Trademarks are distinctive when applied to the Moose Knuckles Products, signifying to the purchaser that the products come from Moose Knuckles and are manufactured to Moose Knuckles' quality standards. Whether Moose Knuckles manufactures the products itself or contracts with others to do so, Moose Knuckles has ensured that products bearing the MOOSE KNUCKLES Trademarks are manufactured to the highest quality standards.

13. The MOOSE KNUCKLES Trademarks are well-known and have been continuously used and never abandoned. The innovative and often unconventional marketing and product designs of the Moose Knuckles Products have enabled the Moose Knuckles brand to

achieve widespread recognition and fame and have made the MOOSE KNUCKLES Trademarks well-known. The widespread fame, outstanding reputation, and goodwill associated with the Moose Knuckles brand have made the MOOSE KNUCKLES Trademarks valuable assets of Moose Knuckles.

14. Genuine Moose Knuckles Products are sold only through authorized retail channels, including high-end department stores such as Nordstrom, Bloomingdale's, and Saks Fifth Avenue, and are recognized by the public as being exclusively associated with the Moose Knuckles brand.

15. Moose Knuckles Products have become enormously popular, driven by the brand's arduous quality standards and innovative design. Among the purchasing public, genuine Moose Knuckles Products are instantly recognizable as such. In the United States and around the world, the Moose Knuckles brand has come to symbolize high quality and great design, and Moose Knuckles Products are among the most recognizable in the world. Moose Knuckles Products are distributed and sold to consumers through a network of authorized dealers located throughout the United States, including in Illinois.

16. Genuine Moose Knuckles Products have also been promoted and sold at the official mooseknucklescanada.com website (the "MK Website"). Sales of Moose Knuckles Products via the MK Website are significant, totaling over $1 million USD annually. The MK Website features proprietary content, images and designs exclusive to the Moose Knuckles brand.

17. The Moose Knuckles brand has also become well-known as being a favorite among internationally known celebrities, many of whom are featured wearing Moose Knuckles Products in photographs published on the Internet, including Gabrielle Union, Emmy Rossum,

Katie Holmes, Kate Bosworth, Nick Jonas, Ethan Hawke, and Zac Efron. Widespread and international media coverage for the Moose Knuckles brand in multiple fashion and celebrity-oriented magazines has occurred in the U.S. and elsewhere, including articles in *Esquire, Glamour, InStyle, Men's Journal, Elle, DuJour,* and *Vougue.* Moose Knuckles augments this unsolicited media coverage with extensive paid advertising in upscale luxury magazines worldwide.

19. Moose Knuckles has sold many millions of dollars of products under the Moose Knuckles Trademarks, and has expended millions of dollars advertising and promoting those marks through virtually every media. As a result, products bearing the MOOSE KNUCKLES Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Moose Knuckles. The MOOSE KNUCKLES Trademarks have achieved fame and recognition which has only added to the inherent distinctiveness of the marks.

19. The goodwill associated with the MOOSE KNUCKLES brand and the MOOSE KNUCKLES Trademarks is of incalculable and inestimable value to Moose Knuckles.

**The Defendants**

20. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell

7

Counterfeit Moose Knuckles Products to consumers within the United States, including the State of Illinois.

21. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the MOOSE KNUCKLES Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Moose Knuckles to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Moose Knuckles will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

22. The success of the Moose Knuckles brand has resulted in its significant counterfeiting. Consequently, Moose Knuckles has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Moose Knuckles has identified numerous domain names linked to fully interactive websites, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Moose Knuckles Products to consumers in this Judicial District and throughout the United States. Despite Moose Knuckles' enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland

Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

23. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Numerous Defendant Domain Names also incorporate the MOOSE KNUCKLES Trademarks into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from the MK Website or another authorized website. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Moose Knuckles has not licensed or authorized Defendants to use any of the MOOSE KNUCKLES Trademarks, and none of the Defendants are authorized retailers of genuine Moose Knuckles Products.

24. Many Defendants also deceive unknowing consumers by using the MOOSE KNUCKLES Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Moose Knuckles Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Moose Knuckles

Products. Other Defendants only show the MOOSE KNUCKLES Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Moose Knuckles Products.

25. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Moose Knuckles Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Moose Knuckles Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of

contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and design elements, including content copied from Moose Knuckles' official MK Website.

27. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

28. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Moose Knuckles' enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

29. Defendants, without any authorization or license from Moose Knuckles, have knowingly and willfully used and continue to use the MOOSE KNUCKLES Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Moose

Knuckles Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Moose Knuckles Products into the United States, including Illinois.

30. Defendants' use of the MOOSE KNUCKLES Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Moose Knuckles Products, including the sale of Counterfeit Moose Knuckles Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Moose Knuckles.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31. Moose Knuckles hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered MOOSE KNUCKLES Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MOOSE KNUCKLES Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Moose Knuckles Products offered, sold or marketed under the MOOSE KNUCKLES Trademarks.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the MOOSE KNUCKLES Trademarks without Moose Knuckles' permission.

34. Moose Knuckles is the exclusive owner of the MOOSE KNUCKLES Trademarks. Moose Knuckles' United States Registrations for the MOOSE KNUCKLES Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Moose Knuckles' rights in the MOOSE KNUCKLES Trademarks, and are willfully infringing and intentionally using counterfeits of the MOOSE KNUCKLES Trademarks. Defendants' willful, intentional and unauthorized use of the MOOSE KNUCKLES Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Moose Knuckles Products among the general public.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Moose Knuckles has no adequate remedy at law, and if Defendants' actions are not enjoined, Moose Knuckles will continue to suffer irreparable harm to its reputation and the goodwill of the MOOSE KNUCKLES Trademarks.

37. The injuries and damages sustained by Moose Knuckles have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Moose Knuckles Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38. Moose Knuckles hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Moose Knuckles Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Moose

Knuckles or the origin, sponsorship, or approval of Defendants' Counterfeit Moose Knuckles Products by Moose Knuckles.

40. By using the MOOSE KNUCKLES Trademarks on the Counterfeit Moose Knuckles Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Moose Knuckles Products.

41. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Moose Knuckles Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42. Moose Knuckles has no adequate remedy at law and, if Defendants' actions are not enjoined, Moose Knuckles will continue to suffer irreparable harm to its reputation and the associated goodwill of the MOOSE KNUCKLES Trademarks.

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF THE MOOSE KNUCKLES TRADEMARKS**

43. Moose Knuckles hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

44. Moose Knuckles is the exclusive owner of the MOOSE KNUCKLES Trademarks. The U.S. Registrations for the MOOSE KNUCKLES Trademarks (Exhibit 1) are in full force and effect. Additionally, the MOOSE KNUCKLES Trademarks are highly distinctive and were distinctive before and at the time of the registration of the Defendant Domain Names.

45. Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the MOOSE KNUCKLES Trademarks have acted with bad faith intent to profit from the unauthorized use of the MOOSE KNUCKLES Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the MOOSE KNUCKLES Trademarks.

46. Defendants have no intellectual property rights in or to MOOSE KNUCKLES Trademarks.

47. Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

48. Moose Knuckles has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating any of the MOOSE KNUCKLES Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Moose Knuckles.

### COUNT IV
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

49. Moose Knuckles hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 48.

50. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Moose Knuckles Products as those of Moose Knuckles, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Moose Knuckles Products, representing that their products have Moose Knuckles'

approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

51.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

52.     Moose Knuckles has no adequate remedy at law, and Defendants' conduct has caused Moose Knuckles to suffer damage to its reputation and associated goodwill. Unless enjoined by the Court, Moose Knuckles will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Moose Knuckles prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the MOOSE KNUCKLES Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Moose Knuckles Product or is not authorized by Moose Knuckles to be sold in connection with the MOOSE KNUCKLES Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Moose Knuckles Product or any other product produced by Moose Knuckles, that is not Moose Knuckles' or not produced under the authorization, control, or supervision of Moose Knuckles and approved by Moose Knuckles for sale under the MOOSE KNUCKLES Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Moose Knuckles Products are those sold under the authorization, control or supervision of Moose Knuckles, or are sponsored by, approved by, or otherwise connected with Moose Knuckles;

    d. further infringing the MOOSE KNUCKLES Trademarks and damaging Moose Knuckles' goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Moose Knuckles, nor authorized by Moose Knuckles to be sold or offered for sale, and which bear any of Moose Knuckles' trademarks, including the MOOSE KNUCKLES Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof; and

2) Entry of an Order that, at Moose Knuckles' choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Moose Knuckles, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Moose Knuckles' selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Moose Knuckles' selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Moose Knuckles' request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing, and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the MOOSE KNUCKLES Trademarks;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the MOOSE KNUCKLES Trademarks; and

   c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Moose Knuckles all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MOOSE KNUCKLES Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Moose Knuckles be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MOOSE KNUCKLES Trademarks and $100,000 per domain name incorporating any of the MOOSE KNUCKLES Trademarks pursuant to 15 U.S.C. § 1117(d);

6) That Moose Knuckles be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 21st day of December 2017.        Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff Moose International Inc.*